# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re:<br><br>**RONALD L. KIRTLAND,**<br><br>                    **Debtor.** | **Bankruptcy Case<br>No. 10-41030-JDP** |

_____

| | |
|---|---|
| **GARY L. RAINSDON, Trustee,**<br><br>                    **Plaintiff,**<br>**vs.**<br><br>**RONALD L. KIRTLAND and<br>SHERRI KIRTLAND,**<br><br>                    **Defendants.** | **Adv. Proceeding<br> No. 10-8119-JDP** |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Lane Erickson, of BUDGE & BAILEY, CHARTERED, Pocatello, Idaho, Attorney for Plaintiff.

MEMORANDUM OF DECISION - 1

John O. Avery, Idaho Falls, Idaho, Attorney for Defendant Ronald Kirtland.

Jeffrey E. Roling, Twin Falls, Idaho, Attorney for Defendant, Sherri Kirtland.

## Introduction

Plaintiff Gary Rainsdon ("Trustee"), the trustee in the chapter 7[1] bankruptcy case of debtor Ronald Kirtland ("Debtor"), commenced this adversary proceeding to avoid the transfers of certain property from Debtor to his ex-wife, Defendant Sherri Kirtland, under both § 548(a) and Idaho's fraudulent transfer statutes. Debtor and Sherri[2] both filed answers in which they denied the transfers are avoidable.[3] A trial in this action was

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[2] References to Ms. Kirtland's first name is solely for the clarity of this decision; no disrespect is intended.

[3] While Trustee named Debtor as a defendant in this adversary proceeding, and while Debtor appeared and defended against Trustee's avoidance claims against Sherri, the Court is at a loss as to why Debtor was a necessary party in this action. Clearly, in an avoidance action, Trustee's remedy is limited to recovery of the transferred property, or its value, from the

(continued...)

MEMORANDUM OF DECISION - 2

held on July 29, 2011, and, thereafter, the parties submitted their closing

arguments via briefs.  After considering the testimony and evidence, the

parties' submissions, and applicable law, this Memorandum sets forth the

Court's findings of fact and conclusions of law and decision in this action.

Rules 7052, 9014.

## Facts

Debtor and Sherri married on April 25, 2003, and divorced on

September 2, 2009.  Before and during their marriage, they jointly

purchased various items of property.  Later, in connection with their

divorce, Debtor transferred his interest in many of those items to Sherri,

including:

| Property | Date purchased | Date of purchase relative to marriage | Date transferred to Sherri |
|---|---|---|---|
| 1999 Harley Davidson Motorcycle | Apr. 14, 2003 | Before | June 3, 2004 |

---

[3](...continued)

transferee, *i.e.*, Sherri.  § 550(a).  As near as the Court can tell, there is simply no
discernable basis in this action for any claim by Trustee against Debtor.
Accordingly, as to Debtor, this action will be dismissed.

MEMORANDUM OF DECISION - 3

| 1981 Chevrolet Corvette | Sometime in 2007 | During | Apr. 14, 2009 |
|---|---|---|---|
| 2005 Bombardier ATV | June 5, 2005 | During | Apr. 21, 2009 |
| 2005 Bombardier ATV | June 5, 2005 | During | Apr. 21, 2005 |
| 2006 Honda Ridgeline | June 6, 2005 | During | Feb. 11, 2010 |
| 2006 Utility Trailer | Jan. 2, 2006 | During | Aug. 11, 2009 |
| 2009 Yamaha Motorcycle | May 16, 2009 | During | Titled in her name only |

*See* Exhs. 101, 102, 103, 104,[4] 105, 106, 306.[5]

As can be seen, several of the transfers from Debtor to Sherri

occurred in April 2009.  At around that same time, Sherri transferred two

---

[4] Debtor never transferred an interest in the 2009 Yamaha motorcycle to Sherri.  The motorcycle was initially titled in Sherri's name, and Debtor and Sherri have, apparently, always considered it to be Sherri's separate property.  Despite this, Trustee believes Debtor has an interest in the motorcycle, and he seeks to recover that interest.  The Court reviews the couple's interest in the 2009 Yamaha in order to address Trustee's claims.

[5] While Trustee argues that the transfer by Debtor of an interest in a 2006 "scooter" to Sherri can be avoided, no evidence concerning any scooter was submitted to the Court besides a bare admission in Sherri's Answer, Dkt. No. 4, that the scooter was purchased during her marriage to Debtor.  Even if Debtor had an interest in the scooter at one time, there is no evidence that he transferred that interest during the fraudulent transfer statutes' look back periods.

MEMORANDUM OF DECISION - 4

ATVs to Debtor, which were identical to those transferred from Debtor to Sherri, except for the color. Also in April 2009, Sherri gave Debtor a $6,500 check. At trial, she explained this money was for "anything and everything" transferred to her from Debtor; she felt it was "more than [she] should have given him."

The source of the $6,500 check, as well as the funds used to purchase the 1981 Corvette and 2009 Yamaha motorcycle, was a bank account maintained by Sherri.[6] Sherri deposited the real estate commissions she earned during her marriage to Debtor into this account, as well as the proceeds from the sale of a pre-marital home that she, alone owned.[7] While both Sherri and Debtor testified that the 1981 Corvette and 2009 Yamaha motorcycle were paid for with funds from this account, neither presented any documentary evidence to trace those purchases to the

---

[6] Throughout their marriage, Debtor and Sherri maintained separate bank accounts.

[7] Sherri estimates the proceeds from that sale were roughly $50,000.

MEMORANDUM OF DECISION - 5

proceeds derived from the sale of Sherri's home.[8]

During his marriage to Sherri, Debtor obtained several credit cards and accumulated significant debt. For the most part, Sherri was not aware of the existence of the cards and debts. In early February 2009, however, Debtor disclosed some of the cards and debts to Sherri. Soon thereafter, Sherri announced her intent to divorce Debtor.

Around April or May 2009, Sherri drafted a property settlement agreement ("Agreement") and filed a divorce action. The Agreement was approved and adopted by the state court in a divorce decree entered on September 2, 2009. Per the Agreement, Debtor was responsible to pay the debts on a 2008 Honda Civic, a 2006 Searay boat, two credit cards taken out during marriage in his name,[9] and a mortgage on bare land owned by

_____

[8] Debtor testified that he "assumed" the funds were from the home-sale proceeds. Sherri testified that the funds "probably came from" the home-sale proceeds.

[9] Debtor had secured other cards, and incurred other debt, not disclosed to Sherri. Because she did not know of those cards and debts at the time she drafted the property settlement agreement, they are not addressed therein.

MEMORANDUM OF DECISION - 6

Sherri and him ("Twin Falls land").[10]  Sherri assumed the debt on the

couple's 2006 Honda Ridgeline.

In addition to assigning responsibility for payment of some of the

couple's debts, the Agreement contained terms dividing some of their

community property.  The Agreement provided that Debtor would receive

his "personal effects," his clothing, and a 2008 Honda Civic; Sherri would

receive her "personal effects," her clothing, and the 2006 Honda Ridgeline.

The Agreement did not address the couple's interests in the Twin Falls

land, the 2006 Searay boat, or any other community property.  Debtor and

Sherri testified that the Agreement was silent as to their other assets

because they intended to allocate their other community property through

Debtor's pre-divorce transfers to Sherri.

Approximately nine months after entry of their divorce decree,

Debtor filed for chapter 7 bankruptcy protection.  Curiously, he did not

disclose any of his asset transfers to Sherri in his filed Statement of

---

[10]  Debtor has not paid on the Twin Falls land or 2006 Searay debts since
the entering into the Agreement.  Sherri has made payments on the Twin Falls
land to prevent a default.

MEMORANDUM OF DECISION - 7

Financial Affairs ("SOFA").  When Trustee became aware of the transfers,

he filed this adversary proceeding to avoid Debtor's transfers to Sherri

pursuant to § 548(a) and Idaho's fraudulent transfer statutes.

## Discussion

**I.    Community property law limits Debtor's avoidable transfers.**

To determine which transfers Trustee may avoid, the Court must

first confirm that Debtor held an interest in the items of property targeted

by Trustee.  Debtor's property interests in those assets are determined by

Idaho community property law.  *See Dumas v. Mantle* (*In re Mantle*), 153

F.3d 1082, 1084 (9th Cir. 1998).

1.    <u>Community property impact on property ownership</u>.

In Idaho, property's character as separate or community property

vests when it is acquired.  *Kraly v. Kraly*, 208 P.3d 281, 285 (Idaho 2009).

There is a presumption that all property acquired by either spouse during

marriage is community property.  Idaho Code § 32-906; *Winn v. Winn*, 673

P.2d 411, 413 (Idaho 1983).  That presumption, however, may be rebutted.

*See Stanger v. Stanger*, 571 P.2d 1126, 1128 (Idaho 1977).  The burden of

MEMORANDUM OF DECISION - 8

overcoming the community property presumption is on the party asserting

property's separate character.  *Winn*, 673 P.2d at 413 (citing *Estate of*

*Freeburn*, 555 P.2d 385 (Idaho 1976)).  To meet that burden, a party must

prove to a "reasonable certainty and particularity that the property

acquired during marriage is separate property."  *Kraly*, 208 P.3d at 285.

A party might prove property is separate property in several ways.

*See* Idaho Code § 32-903.[11]  Of course, one is to demonstrate the property

was purchased before a couple was married.  *Id.*  Another is to show that,

after a couple was married, the property was purchased with one spouse's

separate property funds.  *Id.*; *see also Stanger*, 571 P.2d at 1129 (explaining

that the character of property acquired during marriage is "determined by

the funds with which it is purchased").  Under that approach, to

adequately determine whether property purchased during a marriage is

---

[11]  Idaho Code §  32-903 defines "Separate Property" as:

> All property of either the husband or the wife owned
> by him or her before marriage, and that acquired
> afterward by either by gift, bequest, devise, or
> descent, or that which either he or she shall acquire
> with the proceeds of his or her separate property, by
> way of moneys or other property . . . .

MEMORANDUM OF DECISION - 9

community or separate in character, the nature and character of the funds

used to purchase the property must be explored.

The earnings of either spouse during a marriage are community

property.  *See Hiatt v. Hiatt*, 487 P.2d 1121, 1122 (Idaho 1971).  As

community property, each spouse has the "right to manage and control"

those funds.  *See* Idaho Code § 32-912.  The analysis becomes more

complex, though, when a spouse's community property earnings are

commingled with her separate property money in a single bank account.

*See Batra v. Batra*, 17 P.3d 889, 895–98 (Idaho Ct. App. 2001).

Generally, merely commingling funds in a single bank account does

not change separate property's character to community property, unless

the commingled account is treated as one fund.  *Id.* at 896 (quoting

*Josephson v. Josephson*, 772 P.2d 1236, 1239 (Idaho Ct. App. 1989)).  To

properly segregate funds in a commingled bank account, a spouse must

document and identify separate property monies from community

property monies through direct tracing or an accounting.  *Id.* (citing *Barton

v. Barton*, 973 P.2d 746, 748 (Idaho 1999)).  In other words, to show that a

MEMORANDUM OF DECISION - 10

particular commingled-account-funded purchase is made with separate

property, a party must trace the purchase funds to a deposit of separate

property. *Id.*

    2.    <u>The impact of community property law in this case</u>.

    Debtor and Sherri jointly purchased the 1999 Harley Davidson prior

to their marriage. While jointly owned, it was not community property.

*See In re Cooke's Estate*, 524 P.2d 176, 186 (Idaho 1973) ("Property held in

joint tenancy between husband and wife is not community property.").

Debtor effectively transferred his interest in the Harley to Sherri in 2004,

and the motorcycle was her separate property from that time forward.[12]

Because the Harley has been Sherri's separate property since 2004, Debtor

did not transfer an interest in the Harley to Sherri within the applicable

"reach back" times in the fraudulent transfer provisions of § 548(a) or

---

[12] Though Sherri transferred the Harley to her parents for a short time in
2005, they gifted the motorcycle back to her just over a month later. As between
Debtor and Sherri, the Harley was Sherri's separate property from 2004. *See also*
*Suchan v. Suchan*, 682 P.2d 607, 610 (Idaho 1984) (explaining that property gifted
to one spouse during marriage is that spouse's separate property).

MEMORANDUM OF DECISION - 11

Idaho law.[13]

Debtor and Sherri purchased the 1981 Corvette during their

marriage, and it is presumed to be community property.  In an attempt to

rebut the community property presumption, Debtor and Sherri testified the

Corvette was purchased with funds from Sherri's separate bank account,

which they claimed were likely separate property funds.  Yet, while

Sherri's bank account contained some separate property funds, it also

contained community property funds earned by Sherri while married to

Debtor.  Neither Debtor nor Sherri presented direct tracing or accounting

evidence to show that the funds used to purchase the 1981 Corvette were

Sherri's separate property.  Because they did not sufficiently rebut the

community property presumption, the Court finds that Debtor held a

community property interest in the 1981 Corvette, which he transferred to

Sherri in April 2009.

---

[13]  Under § 548(a)(1), if the other elements are proven, a trustee may avoid
a debtor's transfer of property occurring within two years before the date the
debtor filed his bankruptcy petition.  Actions seeking to avoid transfers pursuant
to Idaho Code §§ 55-913(1)(a), (1)(b), and 55-914(1) must be commenced within
four years of the transfer.  Idaho Code § 55-918.

MEMORANDUM OF DECISION - 12

Like the Corvette, the 2009 Yamaha motorcycle was purchased with funds from Sherri's bank account.  Again, inadequate evidence was presented to persuade the Court that the motorcycle was purchased with Sherri's separate property funds, and the community property presumption is not rebutted.  The fact that the 2009 Yamaha was titled in Sherri's name only does not modify the effect of the community property presumption.  *See Hall v. Hall*, 777 P.2d 255, 257–58 (Idaho 1989) (finding that, for real property, "[a] deed granting property to only one spouse shows the acquisition of property during marriage, and without more, the presumption that the property is community applies").

Unlike the 1981 Corvette, however, there is no evidence that Debtor transferred his interest in the 2009 Yamaha to Sherri, and the couple's Agreement did not address the motorcycle.  Where a divorce decree does not dispose of a couple's community property interests, the former spouses thereafter hold an undivided one-half interest in the property.  *See Hopkins v. Idaho State Univ. Credit Union* (*In re Herter*), __ B.R. __, 2011 WL 2489992 at *8 (Bankr. D. Idaho June 21, 2011) (citing *Quinlan v. Pearson*, 225 P.2d 455,

MEMORANDUM OF DECISION - 13

456 (Idaho 1950)).  Thus, upon the entry of their divorce decree and

Agreement, Debtor and Sherri each continued to own a one-half interest in

the 2009 Yamaha motorcycle, not as community property, but as tenants-

in-common.

The evidence is undisputed that in April 2009, Sherri wrote a $6,500

check to Debtor from her bank account, purportedly attempting to

compensate him for transferring various assets to her.  However, Sherri's

plan was flawed, in that the funds in her bank account used to "pay"

Debtor included her community property earnings.  As a result, absent

tracing evidence, Debtor presumably already held an interest in the funds

Sherri used funds to pay him off.  Simply put, Sherri did not prove that the

$6,500 given to Debtor was her separate property.

## II.    Debtor did not commit actual fraud.

Trustee seeks to avoid Debtor's transfers to Sherri, claiming that, in

transferring his property, Debtor committed actual fraud as to his

creditors.  Section 548(a)(1)(A) of the Code provides:

(a)(1)  The trustee may avoid any transfer . . . of an

MEMORANDUM OF DECISION - 14

> interest of the debtor in property . . . that was
> made or incurred on or within 2 years before the
> date of the filing of the petition, if the debtor
> voluntarily or involuntarily—
>> (A)  made such transfer or incurred such
>> obligation with actual intent to hinder, delay, or
>> defraud any entity to which the debtor was or
>> became, on or after the date that such transfer was
>> made or such obligation was incurred, indebted.

Debtor made five transfers of property to Sherri within the two years prior to filing his petition.  Those transfers included his interest in the 1981 Corvette, the two 2005 Bombardier ATVs, the 2006 utility trailer, and the 2006 Honda Ridgeline.

Under these facts, it is a close question whether Debtor made those transfers to Sherri with actual intent to hinder, delay, or defraud his creditors.  Whether a debtor intended to defraud his creditors in transferring property is a question of fact.  *Salven v. Munday* (*In re Kemmer*), 265 B.R. 224, 231 (Bankr. E.D. Cal. 2001) (citing *Jensen v. Dietz* (*In re Sholdan*), 217 F.3d 1006, 1010 (8th Cir. 2000)).  The trustee bears the burden of proving the debtor's intent, and must do so by a preponderance of the evidence.  *Crawforth v. Wheeler* (*In re Wheeler*), 444 B.R. 598, 605 (Bankr. D.

MEMORANDUM OF DECISION - 15

Idaho 2011).

Courts are rarely given direct evidence indicating a debtor's fraudulent intent in transferring property. *Acequia, Inc. v. Clinton* (*In re Acequia, Inc.*), 34 F.3d 800, 805–06 (9th Cir. 1994). Instead, bankruptcy courts look to determine the presence of "badges," or indicia, of fraud from which fraudulent intent might be inferred. *Id.* While the presence of a single badge of fraud may spur suspicion, if several badges appear, they may collectively be viewed as conclusive evidence of an actual intent to defraud, unless there is clear evidence of a legitimate supervening purpose for the transfer. *Id.* (quoting *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254–55 (1st Cir. 1991)).

Among the badges of fraud often recognized by bankruptcy courts are whether there was actual or threatened litigation against the debtor when the transfer occurred; a purported transfer of all or substantially all of the debtor's property; insolvency or other unmanageable indebtedness on the part of the debtor; a special relationship between the debtor and the transferee; and retention of the property involved in the putative transfer

MEMORANDUM OF DECISION - 16

by the debtor.  *Id.* at 806.  Where a transferor and transferee are related,

closer scrutiny of transfers between the two is warranted.  *In re Wheeler*, 444

B.R. at 606.  In addition, a debtor's omission of transfers from his SOFA can

indicate fraud.  *See id.*

Here, several badges of fraud are likely present.[14]  Debtor and Sherri

were married at the time of the transfers, except for the transfer of Debtor's

interest in the 2006 Honda Ridgeline.[15]  Debtor has admitted he was

insolvent at the time each transfer was made.  *See* Exh. 108 at 10.  And,

Debtor did not list any of the transfers to Sherri on his SOFA.

On the other hand, Debtor did not transfer all of his assets to Sherri;

he retained his interest in the Twin Falls land, the 2006 Searay boat, the

---

[14]  In addition to the badges discussed here, Trustee argues that, because
Debtor and Sherri have continued to live in the same house, Debtor retained the
putatively transferred property.  The evidence showed that, since their divorce,
Debtor has rented a room in Sherri's house, and has access to his bedroom, a
separate restroom, the kitchen, and common living areas.  He also pays Sherri for
the use of her daughter's vehicle.  Trustee has not, however, provided any
evidence that Debtor retained access or control over the items of transferred
property.

[15]  The 2006 Honda Ridgeline was effectively transferred in the couple's
Agreement.

MEMORANDUM OF DECISION - 17

2008 Honda Civic, the 2009 Yamaha motorcycle, and his personal effects and clothing.  In exchange for his interest in two 2005 Bombardier ATVs transferred to Sherri, the evidence shows that she transferred her interest in two identical ATVs to Debtor.[16]  For his interest in the 2006 Honda Ridgeline, Debtor received relief from the obligation to pay for that vehicle, as Sherri assumed the outstanding debt against the Ridgeline through the Agreement.  Sherri also attempted to compensate Debtor for the transfer of his interests in the 2006 utility trailer and the 1981 Corvette.  While Debtor already had a community property interest in the funds Sherri used to pay him, the Court finds that Debtor and Sherri believed, in good faith, that she was compensating him, and the couple was not thereby intending to defraud Debtor's creditors through such payment.

On balance, while there are indeed some traditional badges of fraud present on this record, the Court finds Debtor transferred his interests in property to Sherri in preparation for the parties' divorce, and not as part of

---

[16]  While no documentary evidence of those transfers was presented, the Court finds Debtor's and Sherri's testimony that such transfers occurred to be credible.

MEMORANDUM OF DECISION - 18

any scheme or plan to defraud, hinder, or delay Debtor's creditors from

reaching the assets.  Therefore, Trustee can not avoid Debtor's transfers of

these items under either § 548(a)(1)(A) or Idaho's actual fraud statute.[17]

**III.    Trustee may avoid some of Debtor's transfers as constructively fraudulent.**

Trustee also asserts that Debtor's transfers are avoidable because

they are constructively fraudulent.  Section 548(a)(1)(B) provides:

> (a)(1)  The trustee may avoid any transfer . . . of an
> interest of the debtor in property . . . that was
> made or incurred on or within 2 years before the
> date of the filing of the petition, if the debtor
> voluntarily or involuntarily—

---

[17] Idaho Code § 55-913(1)(a) provides:

> (1)  A transfer made or obligation incurred by a
> debtor is fraudulent as to a creditor, whether the
> creditor's claim arose before or after the transfer was
> made or the obligation was incurred, if the debtor
> made the transfer or incurred the obligation:
>      (a)  With actual intent to hinder, delay, or defraud
>      any creditor of the debtor.

The state statute therefore prompts a similar analysis to that conducted under 11 U.S.C. § 548(a)(1)(A).  The only difference is that the period within which a transfer may be deemed fraudulent is extended to four years under the state statute.  *See* Idaho Code § 55-913(1)(a).  For the same reasons that it finds Debtor did not commit actual fraud under the Bankruptcy Code, the Court finds Debtor did not commit actual fraud under the corresponding state statute.

MEMORANDUM OF DECISION - 19

(B)(I)  received less than a reasonably equivalent
value in exchange for such transfer or obligation;
and
    (ii)(I)  was insolvent on the date that such transfer
    was made or such obligation was incurred, or
    became insolvent as a result of such transfer or
    obligation;
    ****

Whether "reasonably equivalent value" has been received is determined

through a two-step process. *Jordan v. Kroneberger* (*In re Jordan*), 392 B.R.

428, 441 (Bankr. D. Idaho 2008).  First, the Court must determine that a

debtor received value in exchange for a transfer.  *Id.*  "Value," for the

purposes of § 548, is defined to mean "property, or satisfaction or securing

of a present or antecedent debt of the debtor."  § 548(d)(2).

Second, the Court must determine whether the value received by a

debtor is reasonably equivalent to the value of the transferred property.  *In

re Jordan*, 392 B.R. at 441.  In analyzing reasonably equivalent value, the

Court looks at values as of the time of the transfer.  *Krommenhoek v. Natural

Res. Recovery, Inc.* (*In re Treasure Valley Opportunities, Inc.*), 166 B.R. 701, 704

(Bankr. D. Idaho 1994).  All of the circumstances surrounding the transfer

MEMORANDUM OF DECISION - 20

must be analyzed and the Court reviews the transfer for its net effect on the

bankruptcy estate funds available for the debtor's unsecured creditors.  *In*

*re Jordan*, 392 B.R. at 441.  If a party gets "roughly the value it gave," it has

received reasonably equivalent value, and indirect financial benefits

constitute value if they confer an economic benefit on the debtor.  *Id.* at

441–42 & n.26.  The trustee bringing a § 548(a)(1)(B) action has the duty of

showing that reasonably equivalent value was not received, and of proving

all other § 548(a)(1)(B) elements.  *See Murietta v. Fehrs* (*In re Fehrs*), 391 B.R.

53, 73 (Bankr. D. Idaho 2008).

 Sherri transferred her interest in two 2005 Bombardier ATVs to

Debtor in exchange for the transfer of his interests in two identical ATVs to

her.  There was no net adverse effect on Debtor's bankruptcy estate as a

result of those transfers.[18]  Therefore, the Court finds that Debtor received

reasonably equivalent value from Sherri in exchange for his interests in the

two ATVs transferred to her.

---

 [18]  Prior to the transfers, Debtor had one-half interests in four ATVs; after
the transfer, he had a whole interest in two ATVs.

MEMORANDUM OF DECISION - 21

Debtor transferred his interest in the 2006 Honda Ridgeline to Sherri pursuant to the Agreement.  At the same time, Sherri assumed all of the debt associated with that vehicle.  While Debtor transferred away his equity interest in the truck, he received relief from his obligation to pay for that interest in return.  Trustee did not present any evidence indicating that the value of the debt assumed by Sherri was not reasonably equivalent to the value of Debtor's transferred interest in the vehicle, nor has it been shown that Sherri has not made the payments required on the truck loan.

Finally, Sherri wrote a $6,500 check to Debtor for "anything and everything" transferred to her from Debtor.  Because Debtor received reasonably equivalent value for his other transferred interests, the Court must analyze whether the $6,500 check was reasonably equivalent value for the transfers of Debtor's interests in the 2006 utility trailer and the 1981 Corvette.

As noted above, while Sherri gave Debtor $6,500, the check was drawn on a bank account in which Debtor already had a community property interest, and which he had the right to manage and control under

MEMORANDUM OF DECISION - 22

Idaho law.  Even though Debtor and Sherri likely intended to compensate Debtor for his interests in the trailer and Corvette from Sherri's separate funds, she did not trace the $6,500 to her separate property, and, thus, did not show that Debtor received anything in addition to what he already owned.  Simply put, the evidence shows that Debtor did not receive reasonably equivalent value for his interests in the 2006 utility trailer and the 1981 Corvette.

The transfers of Debtor's interests in the trailer and the Corvette occurred within two years of his filing his bankruptcy petition.  Debtor was insolvent at the time, and transferred the property for less than reasonably equivalent value.  Trustee may, therefore, avoid those two transfers as constructively fraudulent transfers under both § 548(a)(1)(B), and Idaho law.[19]

---

[19] The result is the same under Idaho's constructive fraud statutes, which also rely on the concept of "reasonably equivalent value."  *See* Idaho Code §§ 55-913(1)(b) and 55-914(1).

MEMORANDUM OF DECISION - 23

**V.      Trustee is likely limited in what he can recover.**

Section 550(a) limits a trustee's recovery when a transfer is avoided

pursuant to § 548 or a state fraudulent transfer statute through § 544(b).

Section 550(a) provides:

>    (a)  Except as otherwise provided in this section,
> to the extent that a transfer is avoided under
> section 544 . . . [or] 548 . . . of this title, the trustee
> may recover, for the benefit of the estate, the
> property transferred, or, if the court so orders, the
> value of such property, from—
>>    (1)  the initial transferee of such transfer or the
>> entity for whose benefit such transfer was made;
>> or
>>    (2)  any immediate or mediate transferee of such
>> initial transferee.

Thus, under this statute, a trustee can recover the value of avoided

transfers, as opposed to the transferred property itself, only if ordered by

the Court.  § 550(a).  Where a court allows property's value to be recovered,

the measure of that value is to be based on the property's value when it

was transferred.  *See USAA Fed. Sav. Bank v. Thacker* (*In re Taylor*), 599 F.3d

880, 890 (9th Cir. 2010).  Here, Trustee presented no evidence to the Court

establishing the value of Debtor's interests in these items when

MEMORANDUM OF DECISION - 24

transferred.[20]  As a result, the Court can not determine an appropriate

recovery value, and will not issue an order allowing Trustee to recover the

transferred property's value.

Of course, Trustee may recover the property that was transferred.

He is limited in doing so, however, if that property has since been

transferred to a good faith transferee for value without knowledge of the

transfer's avoidability.  § 550(b).[21]  The record is unclear whether Sherri

retains the transferred items.  If she still owns them, the Court will order

her to turn them over to Trustee.

---

[20]  At trial, Trustee testified to the transferred property's values as of the
date of trial.  That date, however, was roughly two years after the transfers
actually occurred, and Trustee did not present any evidence regarding the
property's value when transferred.

[21]  Section 550(b) provides:

> The trustee may not recover under section (a)(2) of
> this section from—
>> (1)  a transferee that takes for value, . . . in good faith,
>> and without knowledge of the voidability of the
>> transfer avoided
> ****

MEMORANDUM OF DECISION - 25

**Conclusion**

Under § 548(a)(1)(B) and Idaho's constructive fraudulent transfer statutes, Trustee may avoid Debtor's transfers to Sherri of his interests in the 2006 utility trailer and the 1981 Corvette.  In the absence of evidence of the value of those interests when transferred, however, Trustee is limited to recovering the actual property transferred, assuming Sherri still owns them.  Trustee's remaining claims to avoid transfers lack merit, and will be dismissed.

Counsel for the parties shall cooperate in the prompt submission of an approved form of judgment for entry by the Court.

Dated:  September 30, 2011

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 26